IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DOROTHY GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-471 |
| | ) | |
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS | ) | |
| HEALTH AND WELFARE FUND | ) | |
| ACTIVE PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Dorothy Garner, had spinal surgery on February 5, 2019. Her health insurance plan, provided by the defendant, Central States, refused to pay the medical bills arising from the surgery. After internal appeals authorized by the plan were unsuccessful, Ms. Garner filed this suit seeking a declaration of entitlement to health insurance benefits. The parties have each moved for summary judgment. There are no disputed questions of material fact and the record clearly shows that the decision to deny coverage was based on a flawed process in which Central States sought and relied on a recommendation from a physician without providing the physician with all the relevant records. Ms. Garner is entitled to judgment as a matter of law.

I.     UNDISPUTED FACTS

Ms. Garner has medical coverage from Central States through a plan provided by her husband's employer. Doc. 23 at ¶ 10. The plan is a self-funded employee benefit

plan governed by the Employee Retirement Income Security Act. Doc. 23-1 at p. 73 § 11.11. The plan excludes coverage for "care, treatment, services or supplies which are not medically necessary or are not generally accepted by the medical community as Standard Medical Care, Treatment, Services or Supplies." *Id.* at p. 45 § 4.02. The plan gives its trustees discretionary authority to make coverage decisions. *Id.* at p. 56 § 8.02, p. 74 § 11.13.

### A. Relevant Medical History

Ms. Garner began seeing Dr. Henry Elsner at Carolina Neurosurgery and Spine several years ago for back and neck pain. Doc. 24 at 134.[1] In September 2018, she reported that she was experiencing significant back and neck stiffness. *Id.* After reviewing x-rays, Dr. Elsner noted that Ms. Garner had "significant adjacent level disease with the loss of disc height and some ventral spurring at the C3-[C]4 and C6-C7 levels," and recommended that Ms. Garner perform postural exercises to help manage and mitigate any back and neck pain. *Id.* He also renewed her prescription for hydrocodone, a pain medicine. *Id.* In December 2018, Ms. Garner's neurologist, Dr. Keith Willis, noted that the numbness and visual distortion Ms. Garner was experiencing was not associated with headaches, *id.* at 21, and that she had chronic neck pain. *Id.* at 24.

Ms. Garner returned to Dr. Elsner in January 2019, reporting that despite doing the postural exercises, her neck and back issues were worse and that she was experiencing persistent pain in her right arm. *Id.* at 132. After examining Ms. Garner, Dr. Elsner

---

[1] Record cites to the administrative record will use that document's internal pagination rather than the pagination appended by the CM-ECF system.

2

noted that she had limited range of motion and concluded that since her problems were continuing despite conservative treatment, a new cervical MRI was appropriate. *Id.* Ms. Garner had an MRI of her cervical spine taken on January 15, 2019. *Id.* at 114.

According to Dr. Elsner, the MRI showed evidence of a large central disc protrusion at the C3-C4 level above her C4-C5 fusion and "some effacement of the cord," which possibly exacerbated some of the headache symptoms that Ms. Garner had been experiencing. *Id.* at 130. Dr. Elsner also noted that, on the other end of her fusion, at the C6-C7 level, Ms. Garner had a "significant amount of degenerative spondylosis," which likely aggravated the dysesthesias into her arm and her hand. *Id.* Another physician, Dr. Sean Ploof, also reviewed the MRI and similarly diagnosed Ms. Garner with cervical spondylosis. *Id.* at 114–15. Dr. Ploof explicitly noted that Ms. Garner had a cervical disc extrusion at the C3-C4 level and degenerative changes at the C6-C7 level. *Id.*

Dr. Elsner concluded that a 2-level decompression and arthroplasty at the C3-C4 and C6-C7 levels would help preserve the mobility that Ms. Garner had in her cervical spine while hopefully relieving her symptoms. *Id.* at 130. He performed the surgery on February 5, 2019. *See id.* at 30, 124. When Ms. Garner was admitted to the hospital, Dr. Elsner noted her limited range of motion, and her neurological review was positive for tingling, sensory change, and focal weakness. *Id.* at 17, 337.

### B. Coverage Dispute

Ms. Garner's health care providers submitted claims for the surgery on her behalf to Central States, which Central States denied. *Id.* at 77, 81. Central States initially asserted that "medical justification for the billed services" was needed. *Id.* at 76–77

(EOB dated 3/8/19). After receiving the relevant medical records, Central States then denied coverage because it concluded the surgery was "not medically necessary." *Id.* at 78–79 (EOB dated 4/5/19).

Central States based its decision on a medical review from an independent board-certified general surgeon, Dr. Francesco Serafini. *See id.* at 105, 107–109. Dr. Serafini reviewed limited records associated with the surgery and concluded that the surgery was not medically necessary because there was no MRI showing significant myelopathy or radiculopathy, no documentation of the severity of Ms. Garner's symptoms or how they affected her daily activities, and no documentation of non-operative treatments that Ms. Garner tried before surgery. *Id.* at 108. It is not surprising that Dr. Serafini decided the surgery was not medically necessary, as he was not provided with the January 2019 MRI or any medical records pre-dating the surgery. *See id.* at 107 (listing documents reviewed). It is undisputed that Ms. Garner underwent an MRI, *see id.* at 171, and that her medical records reflected some documentation of the severity of her symptoms and non-operative treatments. *See, e.g.*, *id.* at 132, 134.

In response to an internal appeal, *see id.* at 104, Central States asked Dr. Brad Ward, a board-certified neurosurgeon, to complete an independent review. *Id.* at 80–82. Dr. Ward recommended denial because there was no documentation of any abnormalities on the neurologic exam, no documentation of any conservative measures other than medications, and no clear identification of radicular complaints in a pattern that would match C3-C4 or C6-C7. *Id.* at 81. Based on the recommendation from Dr. Ward, Central States denied the appeal. *Id.* at 64–65.

One of the medical providers submitted a second and final appeal on behalf of Ms. Garner, *id.* at 3, 16–18, which the trustees ultimately denied based on the independent evaluations from Dr. Serafini and Dr. Ward. *Id.* at 4. The appellate review committee explicitly noted that the recommendations of the physicians were based, in part, on "the absence of documentation of any abnormalities on the neurologic exam and also due to a lack of documentation of conservative treatment." *Id.*

## II. APPLICABLE LAW

The parties agree that the health insurance plan vests the trustees with discretionary authority and that judicial review is for abuse of discretion. *See, e.g.*, *Helton v. AT & T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (noting that the standard of review depends on whether the plan gives the administrator the discretionary authority to make coverage decisions); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010). Under this standard, courts should affirm a discretionary decision of a plan administrator if it is the result of a "deliberate, principled reasoning process" and is supported by "substantial evidence," even if the court would reach a different decision independently. *Williams*, 609 F.3d at 630 (citation omitted).

"In determining whether a fiduciary's exercise of discretion is reasonable, numerous factors have been identified as relevant, both in the cases applying ERISA and in principles of trust law." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). As stated in *Booth*:

> [A] court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they

5

> support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342–43.

## III. ANALYSIS

A decision-making process that relies on independent medical reviews without providing reviewers with complete copies of the relevant medical records is not reasoned and principled. Central States did not provide the first medical reviewer with obviously relevant records, including the MRI and Dr. Elsner's office notes, and his opinions were based almost entirely on the misapprehension that these records did not exist. Any reliance on the recommendation from Dr. Serafini was a clear abuse of discretion. ERISA fiduciaries cannot fail to provide relevant medical records to reviewing physicians and then rely on the reviewing physician's opinions explicitly based on the absence of records that undeniably exist.

Central States implies that it provided Dr. Serafini with the MRI and that Dr. Serafini merely opined that the report did not show that the surgery was medically necessary. *See* Doc. 27 at 13–14. Like a number of the factual assertions or implied assertions in the brief submitted by Central States,[2] this contention is affirmatively refuted by the evidence. *See* Doc. 24 at 107.

---

[2] To provide only one example, Central States claims that "Ms. Garner had fusion surgery . . . without exhausting conservative measures first, like [trying] something more than low dose

6

While Central States obtained a second opinion from a different physician and that physician essentially agreed with the first reviewer, Central States explicitly relied on the fact that there were two evaluations with the same findings when it denied the second appeal submitted by Ms. Garner's provider. There is nothing in the record to indicate that the decision of the Trustees was based only on the opinion of Dr. Ward, who had full access to the relevant records.

There was substantial evidence from her treating surgeon that the surgery was medically necessary and met the requirements of the plan. *See, e.g.*, *id.* at 21, 114–15, 130–134. Coverage is consistent with the purpose and goals of the plan, as Ms. Garner underwent serious spinal surgery for well-established back and neck pain. Nothing in the plan itself states that an insured must exhaust or even attempt non-surgical options before surgery becomes medically necessary, and in any event, it is undisputed that Dr. Elsner told Ms. Garner to try postural exercises to see if they would reduce her pain and that although Ms. Garner did those exercises, her pain worsened. Central States did not provide material medical records to the physician reviewer, which gives rise to serious questions about its motives. Its repeated reliance on the opinion of that reviewer was arbitrary and unprincipled.

---

aspirin." Doc. 27 at 18. But the record shows that Ms. Garner took hydrocodone, *see* Doc. 24 at 134, which is a strong pain medicine. The line between spin and mischaracterization can be difficult to draw, and by itself this statement might simply be a poor choice of words or an understatement, but there are many such "poor word choices" and "understatements" in Central States' brief that ignore or slide over the undisputed facts.

7

Courts give trustees substantial freedom and leeway to exercise their judgment in making coverage decisions. But trustees are fiduciaries, and they cannot rely on a flawed process to make those decisions. Failure to provide independent reviewers with material medical records results in a flawed process. While this failure is probably sufficient by itself to show an abuse of discretion, that abuse is confirmed by the fact that the term "medical necessity" is undefined in the plan and by the Plan's failure to recognize the non-surgical efforts undertaken by Ms. Garner and her doctors before surgery was scheduled. Because of this abuse of discretion, Ms. Garner is entitled to summary judgment.

It is **ORDERED** that:

1. The defendant's motion to file sur-reply, Doc. 29, is **GRANTED**.
2. The defendant's motion for summary judgment, Doc. 21, is **DENIED**, and
3. The plaintiff's motion for summary judgment, Doc. 25, is **GRANTED** and the plaintiff is entitled to health insurance benefits covering her February 5, 2019 surgery.
4. Judgment will be entered as time permits.

This the 27th day of April, 2021.

_____
UNITED STATES DISTRICT JUDGE